NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JOSE O. CINTRON ORTIZ, | : | Civil No. 09-4700 (JBS) |
| Petitioner, | : | |
| | : | **OPINION** |
| v. | : | |
| J. GRONDOLSKY, | : | |
| Respondent. | : | |

Petitioner Jose O. Cintron Ortiz ("Petitioner"), who is presently confined at the Federal Correctional Institution at Fort Dix, New Jersey, filed a Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241.[1]  See Docket Entry No. 1.  The Petition stems from the fact that the State of Massachusetts lodged, allegedly, a detainer lodged against Petitioner in the form of a warrant.  See id. at 2-3.  Since, as it appears, Petitioner has not been prosecuted on his Massachusetts charges, Petitioner maintains that the delay in prosecution violated his right to speedy trial.[2]  See id. at 3.  However, Petitioner named, as the sole Respondent in this matter, the warden of his current place of confinement, that is, the warden of the facility where Petitioner is currently serving his federal sentence.  See id. at 1.  Moreover, the Petition unambiguously indicates that Petitioner's challenges are unexhausted either with the three levels of the Bureau of Prisons ("BOP"), see id. at

---

[1]  The Petition arrived accompanied by Petitioner's cover letter which stated that Petitioner plans to submit his filing fee of $5.00 upon obtaining the index number of this matter. The Court, therefore, will direct Petitioner's submission of due filing fee or Petitioner's filing of a proper in forma pauperis application.

[2]  Petitioner reads this issue in light of the Interstate Agreement on Detainers Act ("IAD").  See Docket Entry No. 1

2 (asserting that administrative exhaustion would be futile because "[t]he BOP without instruction from the court will never take responsibility"), and no statement made in the Petition suggests that Petitioner's speedy trial challenges were exhausted with the state courts of appropriate jurisdiction. See generally, Docket Entry No. 1.

    The Petition concludes with the following sentiment:

> The Petitioner at this time respectfully requests that if this petition lands on Judge Simandle[']s desk Judge Simandle recuse from this proper § 2241 petition that is not a § 2255 or a § 3582(c)(2). This is a § 2241 petition that is filed due to the way Petitioner's sentence is being carried out. This goes to the core of habeas. This Petitioner deserves to be responded to not a boiler plait misconstrued denial that makes no sense.

Id. at 4-5.

I.    **Challenges Against the Named Respondent**

    Petitioner's challenges against the named Respondent are deficient for a number of reasons. First, even if these challenges were jurisdictionally proper, the challenges are subject to dismissal as unexhausted.

    Although the exhaustion requirement is not jurisdictional but that of prudence of comity, the requirement is diligently enforced by the federal courts. See Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 760-62 (3d Cir. 1996) (noting that "a procedural default in the administrative process bars judicial review because the reasons for requiring that prisoners challenging disciplinary actions exhaust their administrative remedies are analogous to the reasons for requiring that they exhaust their judicial remedies before challenging their convictions; thus, the effect of a failure to exhaust in either context should be similar"); see also Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000) ("we have consistently applied an exhaustion requirement to claims brought under § 2241"). In order

for a federal prisoner to exhaust her administrative remedies, she must comply with 28 C.F.R. § 542. See 28 C.F.R. § 542.10, et seq.; Lindsay v. Williamson, No. 1:CV-07-0808, 2007 U.S. Dist. LEXIS 54310, 2007 WL 2155544, at *2 (M.D. Pa. July 26, 2007). An inmate first must informally present his complaint to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief. See 28 C.F.R. § 542.13(a). If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where she is confined. See id. at § 542.14(a). If dissatisfied with the response, he may then appeal an adverse decision to the Regional Office and the Central Office of the BOP. See id. at §§ 542.15(a) and 542.18. No administrative appeal is considered finally exhausted until a decision is reached on the merits by the BOP's Central Office. See Sharpe v. Costello, 289 Fed. App'x 475 (3d Cir. 2008). Although, in certain narrow circumstances, the exhaustion requirement might be waived, the litigant's self-serving conclusion that the agency would not act unless it is directed by a court cannot qualify as a valid basis for allowing the litigant to proceed with unexhausted claims.

Second, if this Court were to take Petitioner's allegations at their face value in the sense of presuming that Petitioner wishes to challenge the effect the BOP gives to Petitioner's Massachusetts detainer, the Court would be without jurisdiction to address Petitioner's challenges, since the Petition does not allege that the detainer has any effect on Petitioner's federal sentence. A prisoner is entitled to a writ of habeas corpus only if he "seek[s] to invalidate the duration of [his] confinement - either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the [government's] custody." See Wilkinson v. Dotson, 544 U.S. 74, 81 (2005). In contrast, if a judgment in the prisoner's favor would not affect the fact or duration of the prisoner's incarceration, habeas relief is unavailable and a civil

3

complaint is the appropriate form of remedy. See, e.g., Ganim v. Federal Bureau of Prisons, 235 Fed. App'x 882 (3d Cir. 2007) (holding that district court lacks jurisdiction under § 2241 to entertain prisoner's challenge to his transfer between federal prisons); Bronson v. Demming, 56 Fed. App'x 551, 553-54 (3d Cir. 2002) (habeas relief was unavailable to inmate seeking release from disciplinary segregation to general population, and district court properly dismissed habeas petition without prejudice to any right to assert claims in properly filed civil rights complaint). Here, Petitioner's allegations against the BOP (and Petitioner's warden, as a named Respondent and an agent of the BOP) are, effectively, limited to the sole fact that the BOP has Petitioner's detainer on file. However, it appears that the fact that the BOP keeps Petitioner's Massachusetts detainer on file in no way affects the duration of Petitioner's confinement on his currently served federal sentence; indeed, the Petition is wholly silent as to that matter.[3] See generally, Docket Entry No. 1. Thus, Petitioner's challenges against the BOP should be dismissed not only as unexhausted (which would warrant a dismissal without prejudice), but also should be dismissed with prejudice, for lack of jurisdiction.

---

[3] Petitioner argues that, in the event his Massachusetts detainer is removed, Petitioner's "custody level" might, hypothetically, be changed and, exponentially hypothetically, Petitioner's place of confinement might change from Fort Dix to another federal prison. See Docket Entry No. 1, at 2. However, contrary to Petitioner's impression, challenges to the prisoner's place of confinement fall outside § 2241 jurisdiction. See Ganim v. Federal Bureau of Prisons, 235 Fed. App'x 882 (explaining that in United States v. Jalili, 925 F.2d 889 (6th Cir. 1991), that is, the case relied upon by Petitioner, the prisoner's confinement in a secure prison, instead of in a community correctional center ("CCC"), qualified his claims for § 2241 jurisdiction, but only because "[c]arrying out a sentence through detention in a CCC is very different from carrying out a sentence in an ordinary penal institution" since, "at CCCs, unlike in prison, inmates may be eligible for short-term releases for daily work in the community, overnight and weekend passes, and longer furloughs." Here, unlike in Jalili, Petitioner does not assert that removal of his detainer would entitle hiM to transfer to a community correctional center).

Finally, even if this Court were to ignore the jurisdictional bar and lack-of-administrative-exhaustion aspect, Petitioner's challenges against the BOP are invalid on the merits. Specifically, if the Court were to hypothesize that Petitioner asks this Court to order the BOP to remove, dismiss or otherwise disregard the detainer filed by Massachusetts officials, Petitioner would not be not entitled to such relief. The BOP's Program Statement 5800.14 provides that, "[i]f an inmate says that his or her rights have been violated under the IAD, the inmate will be advised to contact the state authorities or his or her attorney. The Bureau does not decide the validity of the detainer or violation of any IAD provision. All detainers will remain in full force and effect, unless and until the charges from the receiving state are dismissed and/or the receiving state authorizes, in writing, the removal of the detainer." Inmate Systems Management Manual, Program Statement 5800.14, ch. 6 § 612.

Moreover, Section 610 provides that,

> [i]f the inmate has not been brought to trial within 180 days from the date prosecuting officials received the IAD packet, ISM staff will correspond with the prosecutor . . . calling attention to the lapse of the 180-day period. *Only the state may authorize the removal of its detainer.* The inmate must address any request regarding a possible violation of the IAD[] to the appropriate *state* court.

Id. ch. 6 § 610(I). Since federal law does not authorize the BOP to dismiss or disregard any state-issued pretrial detainers, Petitioner is not entitled to an order directing the BOP to dismiss his Massachusetts detainer, and his claims against the BOP and the warden should be dismissed, with prejudice, as meritless.

## II.   Implied Challenges Against the State of Massachusetts

Although Petitioner does not name the Attorney General for the State of Massachusetts as a Respondent in this matter, his Petition is laden with allegations seemingly aimed against the State. See Docket Entry No. 1, at 3 ("Massachusetts . . . totally disrespected [Petitioner"; "The State of

5

Massachusetts has totally ignored and disrespected the rights of [Petitioner] and the [IAD]"). In light of the foregoing, the Court deduces that Petitioner might have inadvertently omitted naming the Attorney General for the State of Massachusetts as a Respondent in this matter and would construe the Petition as making IAD allegations against the State's Attorney General.

The purpose of the IAD is "to encourage the expeditious and orderly disposition of [outstanding criminal] charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." 18 U.S.C. app. 2, Art. I. "The word 'detainer,' as it is used in the Agreement, is a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." Esola v. Groomes, 520 F. 2d 830, 838 (3d Cir. 1975) (citation and internal quotation marks omitted). To achieve that end, Article III(a) requires that a defendant must be tried on outstanding criminal charges within 180 days after authorities in that state receive his request for final disposition. See 18 U.S.C.A. App. § 2 Art. III(a), (b) and (c).

Article IV of the IAD requires dismissal of the charges in the event that an action is not brought to trial within 180 days of the prosecutor and court's receipt of the request for final disposition. See 18 U.S.C.A. App. § 2 Art. IV(c); Fex v. Michigan, 507 U.S. 43, 51(1993) (prosecuting State's receipt of the request for final disposition starts the 180-day period); United States v. Dent, 149 F.3d 180, 187 (3d Cir. 1998) (inmate's IAD request must "contain sufficient information to alert the government that Article III has been invoked"). Specifically, Article IV provides that,

> in the event that an action on the indictment, information, or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in article III . . . , the appropriate court of the jurisdiction where the

> indictment, information, or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.

18 U.S.C.A. App. § 2 Art. IV(c).

The United States Court of Appeals for the Third Circuit has observed that "only the *courts of the indicting state* can enter an order that would effectively void the criminal charge" based on a violation of the IAD.  See Mokone v. Fenton, 710 F. 2d 998, 1003 (3d Cir. 1983) (emphasis supplied).  In addition, the Court of Appeals has "held that a habeas petitioner seeking a speedy trial in another state, or seeking to bar prosecution of a charge upon which an out-of-state detainer is based, must exhaust the remedies of the state where the charge is pending." Id. at 1002.

For example, in Moore v. De Young, 515 F.2d 437 (3d Cir. 1975), a pre-trial detainee filed a habeas petition in this Court asserting denial of the right to a speedy trial and seeking discharge from custody and an injunction against state criminal proceedings.  While the district court granted the petitioner pre-trial habeas relief, the Court of Appeals for the Third Circuit reversed on the grounds that the petitioner had not exhausted the merits of his speedy trial claim before the state courts.  See Moore, 515 F. 2d at 447.  Detailing the exhaustion requirement aspect, the Court of Appeals found that

> Moore did not exhaust his state court remedies prior to application for federal habeas corpus relief. This issue is still available to Moore as an affirmative defense at trial and thereafter, on appellate review. Indeed, the trial court expressly recognized that additional evidence as to prejudice on the issue of delay could be adduced at trial.

Id. at 445.

Moreover, the Court of Appeals expressly rejected the petitioner's argument that the constitutional right to a speedy trial is an extraordinary circumstance which bars not only a conviction for the underlying offense but a trial for that offense. As the Court of Appeals explained,

> From the premise that he has a right not to stand trial, Moore proceeds to the conclusion that, to avoid the threatening state trial, there must be some pre-trial forum . . . available to test the merits of his constitutional claim. Otherwise, he argues, he would be required to undergo the rigors of trial to vindicate his claim that the state court can no longer bring him to trial . . . . We are not prepared to hold that . . . the alleged denial of Moore's right to a speedy trial, constitutes such "extraordinary circumstances" as to require federal intervention prior to exhaustion of state court remedies. We perceive nothing in the nature of the speedy trial right to qualify it as a per se "extraordinary circumstance." We know of no authority . . . that excepts or singles out the constitutional issue of speedy trial as an extraordinary circumstance sufficient to dispense with the exhaustion requirement.

Id. at 446 (citation and internal quotation marks omitted).

The Court of Appeals accordingly reversed the order granting pretrial habeas relief to Moore. "Moore having failed to exhaust his state remedies on the merits and having failed to present an 'extraordinary circumstance' which would warrant pre-trial, pre-exhaustion habeas corpus relief, we conclude that the district court erred as a matter of law in granting Moore's petition." Id. at 447 (footnote omitted); see also United States v. MacDonald, 435 U.S. 850, 861 (1978) (observing that the Speedy Trial Clause "does not, either on its face or according to the decisions of this Court, encompass a 'right not to be tried' which must be upheld prior to trial if it is to be enjoyed at all").[4] It follows that, to the extent Petitioner seeks dismissal of Massachusetts charges, pretrial habeas

---

[4] Other courts of appeals have similarly dismissed pretrial IAD habeas challenges to a detainer on the ground that "Petitioner merely seeks to litigate a federal defense to a criminal charge prematurely in federal court." Knox v. State of Wyoming, 959 F.2d 866, 868 (10th Cir. 1992) (dismissing federal prisoner's 2241 petition challenging Wyoming detainer under IAD where petitioner has yet to be sentenced and appeal his IAD claims); see also Kerns v. Turner, 837 F.2d 336 (8th Cir. 1988) (dismissing § 2241 petition filed by federal prisoner awaiting sentencing on Missouri charge who challenged future state imprisonment as violation of IAD).

relief is premature because Petitioner has not presented this affirmative defense to the Massachusetts courts. As the Court of Appeals explained, "Petitioner . . . will have an opportunity to raise his claimed denial of the right to a speedy trial during his state trial and in any subsequent appellate proceedings in the state courts. Once he has exhausted state court remedies, the federal courts will, of course, be open to him, if need be, to entertain any petition for habeas corpus relief which may be presented. These procedures amply serve to protect [Petitioner]'s constitutional rights without pre-trial federal intervention in the orderly functioning of state criminal processes." Moore, 515 F.2d at 449; see also United States v. Castor, 937 F.2d 293, 296-297 (7th Cir. 1991); Dickerson v. State of Louisiana, 816 F.2d 220, 225-227 (5th Cir. 1987); Atkins v. State of Michigan, 644 F.2d 543, 545-547 (6th Cir. 1981); Carden v. State of Montana, 626 F.2d 82 (9th Cir. 1980).

In sum, because Petitioner failed to exhaust his IAD claim before the Massachusetts courts, this Court will dismiss his implied § 2241 claims against the Attorney General for the State of Massachusetts, without prejudice to bringing these claims in a petition filed under 28 U.S.C. § 2254, after Petitioner's due exhaustion of his state court remedies.

### III.    Request for this Court's Recusal

Finally, this Court takes notice of Petitioner's request to have this Court recuse itself. Although the bases of Petitioner's belief that this Court would construe his Petition as a Section 2255 motion or a § 3582 application are not clear to this Court (since the Court could not locate any action brought by Petitioner under the name Jose Cintron or Jose Ortiz that was presided by this Court, or any action brought by Petitioner under § 2241 and dismissed by any judge in this District as mislabeled Section 2255 or § 3582 proceedings), the Court finds it proper to address Petitioner's concerns nonetheless.

9

Under 28 U.S.C. § 455(a), "any justice, judge or magistrate [judge] of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Section 455(a) requires judicial recusal "if a reasonable person, knowing all the circumstances, would expect that the judge would have actual knowledge" of his/her interest or bias in a case. Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 860 (1988); In re Kensington Intern. Ltd., 368 F.3d 289, 301 (3d Cir. 2004). In making this determination, the court must consider how the facts would appear to a "well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person." United States v. Jordan, 49 F.3d 152, 156 (5th Cir. 1995); accord Clemens v. United States District Court for the Central District of California, 428 F.3d 1175, 1178 (9th Cir. 2005); Matter of Mason, 916 F.2d 384, 386 (7th Cir. 1990).

Finally, it should be noted that, where issues of recusal arise, "a federal judge has a duty to sit where not disqualified which is equally as strong as the duty to not sit where disqualified." Laird v. Tatum, 409 U.S. 824, 837 (1972); see also Clemens, 428 F.3d at 1179; Sensley, 385 F.3d at 598-99; Nichols v. Alley, 71 F.3d 347, 351 (10th Cir. 1995).

Here, Petitioner's request for this Court's recusal does not support a finding of an extrajudicial factor causing impartiality or any degree of favoritism or antagonism on the part of this Court, so as to make fair judgment in this proceedings unlikely. Petitioner's request is based on Petitioner's stated fear that his application would be construed as a § 2255 motion or a § 3582 application, or that Petitioner would be provided with a meaningless boilerplate discussion. These fears, however, do not warrant this Court's recusal. While this Court is, indeed, not infallible, the Court invariably strives to provide all litigants before the Court with meaningful legal discussions as to the bases of the Court's decision and with useful legal guidance, to the best of its ability.

In sum, this Court is unaware of any reason why it would not or could not address the Petition in a fair and impartial manner. Similarly, this Court is not aware of any conflict of interest or any reason why the Court might have any animus toward the Petitioner. Indeed, the Court harbors no animus against him. Therefore, Petitioner's motion for recusal will be denied.

## **CONCLUSION**

For the foregoing reasons, Petitioner's motion for recusal will be denied.

Petitioner's expressly stated challenges against the BOP will be dismissed with prejudice. Petitioner's implied challenges against the Attorney General for the State of Massachusetts will be dismissed without prejudice, as unexhausted.

Petitioner will be directed to submit his filing fee or his in forma pauperis application.

An appropriate order accompanies this Opinion.


       s/ Jerome B. Simandle
JEROME B. SIMANDLE
United States District Judge


Dated: **October 6, 2009**